THE GEORGIA SOUTHERN RAILROAD *vs.* REEVES.

Where the grantor, in consideration of $25.00, and of the building of the railroad, conveyed to a company, its successors or assigns forever, in fee simple, the right of way through his land, and added in the deed the following words: " It is hereby agreed and understood a depot and station is to be located and given to said Osborne Reeves, on the land or strip above conveyed, to be permanently located for the benefit of said Osborne Reeves and his assigns, and to be used for the general purposes of the railroad company," the grantee, by accepting such deed, entered into a covenant to comply with its terms, and this covenant ran with the land and became obligatory upon any second company which became the purchaser, under proper legal direction, of all the rights, privileges, franchises and property of the former.

Deeds.    Contracts.    Covenant.    Before    Judge    Mc-Cutchen.    Gordon Superior Court.    August Term, 1879.

Reported in the decision.

SHUMATE & WILLIAMSON, for plaintiff in error.

W. K. MOORE, by brief, for defendant.

CRAWFORD, Justice.

Osborne Reeves conveyed to the Selma, Rome and Dalton Railroad Company, their successors and assigns, the right of

way through his land, of sufficient width to build said railroad, as well as all side-tracks and turnouts, not to exceed 50 feet from the centre of the main line, together with all the rights and appurtenances thereunto appertaining. The said company was to build the road, pay the said Reeves $25.00 in money; and it was further provided in the said deed of conveyance, that a depot and station was to be located and given to him on the land so conveyed, to be permanently located for his benefit and that of his assigns, to be used also for the general purposes of said railroad company. Under that conveyance the company proceeded to enter upon, locate, grade and construct their railroad, but failed and neglected to comply with their contract in building the said depot, and establishing a station as was agreed by them, until the said company became insolvent. Under proper legal direction all its rights, privileges, franchises and property were sold to, and became the property of, and is now owned by, the Georgia Southern Railroad Company, which said company has succeeded to all the rights of the said Selma, Rome and Dalton Railroad Company.

This company having also failed to locate and build said depot and establish said station, the said Reeves has brought suit against the said company for its failure to comply with the agreement above specified.

He alleges that being the successors and assigns of the said original company, that they are liable to him just as the original company was, and therefore he prays that they be required to build the depot and establish the station upon the said land, if they hold under his said deed of conveyance, and if they do not so hold, that then they be required to pay him the value of the right of way, or upon failure thereof that he may recover the possession of the same. The defendant filed a demurrer to the plaintiff's declaration : 1st, because it was a contract with the Selma, Rome and Dalton Railroad Company, and that it was not alleged that they had failed to do anything which they had obligated themselves to do *in consideration of the conveyance.* 2nd. The building

of the depot and station was a separate undertaking, and was without consideration; but if ever there was a consideration, then there is no right of action against the defendant. 3. That the deed passes a good title to the defendant without condition, and that no right of action is set out in plaintiff's declaration. This demurrer was overruled by the court and the defendant assigned error thereon.

The whole question of whether or not this judgment was error, depends upon the construction of the deed and the relative rights of the parties thereunder.

The grantor, in consideration that the Selma, Rome and Dalton Company should build this railroad, and in consideration of the sum of $25.00 then paid, granted, bargained and conveyed to the said company, *their successors or assigns, forever* in fee simple, a strip of land 100 feet in width through lots of land, 293, 320 and 484, in Gordon county, upon which to build the said railroad, its side-tracks and turnouts, as well as the right to cut all trees which by falling might encumber the track thereof. Immediately after these words in the deed occurs the following clause: "It is hereby agreed and understood, a depot and station is to be located and given to said Osborne Reeves, *on the land or strip above conveyed,* to be permanently located for the benefit of said Osborne Reeves and his assigns, and to be used for the general purposes of said railroad company." It can hardly be insisted that these words, occurring as they do in this deed, are to be ignored, or construed in such way as to deprive this grantor of a clear, palpable benefit which he intended by their insertion.

They present two practical questions, the first is, whether they constitute a covenant? and, secondly, if so, is it a covenant running with the land?

"A covenant is an agreement between two or more persons, by an instrument under seal, to do or not to do some particular thing. It can only be created by deed, but may be by a deed poll (the party named in the deed) as well as by indenture; but where lands are conveyed by indenture

to a person who does not seal the deed, yet if he enters upon the land, and accepts the deed in other matters, he will be bound by the covenants contained in it." Taylor's Landlord and Tenant, §245.

Testing then this clause in the deed by the law, it is an agreement under seal between Reeves, the grantor, and the railroad company, the grantee, that the latter, having the right to build its road upon, and use, occupy and possess 100 feet in width through the land, is to locate a station and build a depot thereon for the benefit of Reeves, the grantor, and his assigns. And even though the instrument is not signed by the company, yet they have entered upon the land, accepted the benefits arising therefrom, and must assume the burdens. It was insisted upon in the argument that this not having been declared to be a part of the *consideration* for the grant of the land by Reeves, created no obligation upon the company to do anything more than it did. The same authority just quoted lays down the rule to be that, "No precise or technical language is necessary, it may be in the form of a condition, an exception, or even a recital, for whenever the intention of the parties can be collected out of the instrument amounting to an agreement, it is sufficient to create a covenant." *Ibid* §246.

Believing, then, and holding, as we do, that this clause in the deed is a covenant, does it run with the land? It is agreed and understood, says the deed, that a depot and station is *to be located on the land conveyed and permanently located* for the benefit of the said Reeves and *his assigns.* The thing to be done is connected directly with the land conveyed, and not confined to the personal use and benefit of the grantor alone, but to him and his assigns. Personal covenants have no relation to the land conveyed; but this relates directly to the land and continues upon it so long as the grantor or his assigns might insist upon it.

When, therefore, the Selma, Rome and Dalton Railroad was sold, the purchaser took it with all its rights, privileges and franchises, and therewith such obligations as were

necessarily incident to, and legally coupled with, the enjoyment of those rights. Where a covenant is entered into and it is for the benefit of the purchaser, the seller gets an enhanced price for his land; and if he reserve or require a benefit for himself and his assigns he gets less present value therefor. In either case the covenant becomes in effect a part of the estate itself; and whoever takes the estate in one case should have the benefit, and in the other should bear the burden." Washburne's Real Property, Vol. 2, pp. 263–4.

The seller in this case required a benefit for himself and his assigns, and no doubt got less for his land at the time of its conveyance; the buyers, in consideration of that "less present value," covenanted to give him a depot and station, and not only bound *themselves* thereto but their *successors* and *assigns*; it was so written in the conveyance, so accepted by the purchasers, so enjoyed and appropriated by them, and the Georgia Southern Railroad Company are the successors in fact and assigns in law of the Selma, Rome and Dalton Railroad Company, and are as much bound as the original company.

It is a well settled rule, says this court in 54 *Ga.*, 170, that a party is charged with notice of recitals in any deed under which he claims title, and Jumel *vs.* Jumel, 7 Paige, 591; Moore *vs.* Bennett, 2 Chan. Cas., 246, and other authorities are cited to support the rule. The demurrer, therefore, was properly overruled, and the judgment is affirmed.

Judgment affirmed.